# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SHARON WEBSTER, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CASE NO.:  2:05-CV-477-VEH** |
| ) | |
| CITY OF HOMEWOOD, et al., ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Sharon Webster ("Webster") initiated this case on March 4, 2005,

(Doc. #1) separately naming the following three (3) entity defendants and one (1)

individual:  the City of Homewood ("COH"), the Homewood Police Department

("HPD"),[1] Check Depot, and Roula Hakim ("Hakim").  By an amendment (Doc. #21)

filed on January 30, 2006, Webster renamed Check Depot as Alabama Cash Services,

Inc. d/b/a Check Depot ("ACS").

The focus of Webster's complaint is that these defendants' actions culminated

in the wrongful arrest and imprisonment of her stemming from a group of checks that

---

[1]By order entered on December 22, 2005 (Doc. #18), the court dismissed the
HPD from Webster's lawsuit determining that it is not an entity subject to suit
pursuant to § 1983 because, under Alabama law, it lacks the capacity to be sued
Alabama law.

she cashed at ACS which were suspected to be forged instruments.  Webster has sued

for illegal seizure of her person, unlawful arrest, and excessive and unreasonable

force under the Fourth and Fourteenth Amendment against COH (count one);[2] assault

and battery against COH (count two); and defamation against ACS and Hakim (count

three).  (*See generally* Doc. #1).

Pending before the court are three (3) separate motions for summary judgment

which are all under submission pursuant to this court's Uniform Initial Order and

various extensions of time:  Hakim's Motion for Summary Judgment (Doc. #35) filed

on October 24, 2006, ACS's Motion for Summary Judgment (Doc. #53) filed on

February 8, 2007, and COH's Motion for Summary Judgment (Doc. #64) filed on

March 5, 2007.   For the reasons stated herein, Hakim's Motion for Summary

Judgment (Doc. #35) is due to granted,  ACS's Motion for Summary Judgment (Doc.

#53) is due to be granted, and COH's Motion for Summary Judgment (Doc. #64) is

due to be granted.

---

[2]While the title of count one indicates that Webster is suing for cruel and
unusual punishment under the Fourth and Fourteenth Amendment, the textual
description in the count indicates otherwise, as does her opposition to COH's
summary judgment motion, in which Webster maintains that her Fourth and
Fourteenth Amendment rights were violated in the form of an illegal seizure of her
person, an unlawful arrest, and the use of excessive or unreasonable force against her.
(Doc. #76 at 16).

## II.   STATEMENT OF FACTS[3]

### A.   Webster and the Hakims

Webster first met Hakim and her husband, Dr. Hisham Hakim ("Dr. Hakim"),

during the last week of September 2002, while she was working for Labor Ready.

Webster SOF No. 1.[4]  Webster was assisting other Labor Ready employees with the

Hakims's move into their new home until the job was finished at the end of October

2002.  *Id.*  Webster became an employed housekeeper of the Hakims during the last

week of October 2002.  Webster SOF No. 2.  Her duties as a housekeeper included

going to the store, shopping, taking home ironing, and sewing.  *Id.*  Webster worked

as a housekeeper for the Hakims through January 18, 2003.  Webster SOF No. 3.2.

### B.   Affidavits of Forgery

---

[3]The following statement of facts is derived from several different sources as labeled and described more specifically below.  Whenever Webster has adequately disputed a fact offered by any of the defendants, the court has accepted Webster's version.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

[4]The designation "Webster SOF" and related numbering (*e.g.*, Webster SOF No. 1) corresponds to Webster's statement of disputed facts as set forth in Doc. #69. A number following a decimal point corresponds to the particular sentence within the numbered statement of disputed facts.  For example, (Webster SOF No. 3.2) would indicate the second sentence of paragraph 3 of Webster's statement of disputed facts is the subject of the court's citation to the record.  Similarly, the designation "Webster AAF" stands for additional undisputed fact and corresponds to Webster's statement of additional undisputed facts contained in Doc. #69.

On February 5, 2003, Hakim executed affidavits of forgery presented by First National Bank stating that Hakim did not sign check numbers 1235, 1381, 1383, 1954, and 1942 payable to Sharon Webster.  ACS AF No. 4.[5]  All five checks were written on the Hakims's account through Frontier National Bank in Sylacauga, Alabama.  ACS AF No. 7.  At that time, Webster had an account with ACS bearing an account identification number of 1201-027119.  ACS AF No. 5.

On or about February 12, 2003, ACS received notification from AmSouth Bank that all five (5) checks were being returned due to forgery.  ACS AF No. 8.  ACS also received the affidavits of forgery from Frontier National Bank.  ACS AF No. 9.  ACS further received the checks, all of which were stamp marked as "FORGERY."  ACS AF No. 10.

## C.    Events of March 3, 2003

On March 3, 2003, Webster arrived at ACS's Greensprings location to cash a United States Treasury Check.  ACS AF No. 11.  Webster testified that, upon her arrival, employees at ACS went to the back of the store and then returned, cashing

---

[5]The designation "ACS AF" stands for admitted fact and indicates a fact offered by ACS that Webster has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  The court's numbering of admitted facts (e.g., ACS AF No. 4) corresponds to the numbering of the ACS's statement of facts as set forth in Doc. #54 and responded to by Webster in Doc. #69.

Webster's United States Treasury Check, but never speaking directly to her regarding any of the checks at issue in this case.  ACS AF No. 12.

While Webster was at its Greensprings location on March 3, 2003, ACS called the HPD.  ACS AF No. 13.  ACS contacted the HPD regarding Webster based upon the affidavits of forgery and the checks previously received from AmSouth Bank and marked as "FORGERY."  ACS AF No. 14.

On March 3, 2003, while on patrol, Officer Jason Cuccuini ("Officer Cuccuini") received a radio call from his dispatch, directing him to go to the subject location of ACS to investigate a forgery.  COH AF No. 3.[6]  Officer Cuccuini  testified he was informed by ACS that, on or about February 10, 2003, it had received affidavits of forgery from First National Bank regarding the checks at issue.  ACS AF No. 23.  ACS also informed Officer Cuccuini that the affidavits of forgery pertained to checks belonging to Hakim and Dr. Hakim.

Upon arriving at ACS's Greensprings store, Webster was there, and Officer Cuccuini spoke with ACS's manager/clerk, Carla Williams ("Williams").  COH AF

_____

[6]The designation "COH AF" stands for admitted fact and indicates a fact offered by COH that Webster has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  The court's numbering of admitted facts (*e.g.*, COH AF No. 3) corresponds to the numbering of the COH's statement of facts as set forth in Doc. #64 and responded to by Webster in Doc. #76.

No. 4.  More specifically, Williams told Officer Cuccuini that Webster had forged

five (5) checks belonging to Hakim and Dr. Hakim.  COH AF No. 5.  Williams also

told Officer Cuccuini that Webster had in the past cashed other checks belonging to

the Hakims.  COH AF No. 6.  Williams stated to Officer Cuccuini that ACS had

received bank affidavits of forgery, stating that the five (5) checks which Webster had

cashed and which belonged to the Hakims had been forged.  COH AF No. 7.

Williams told Officer Cuccuini that Webster had returned to ACS that day to cash

another check, that when she (Williams) "ran" Webster's identification, and "the

information about the forgery came up."  COH AF No. 8.

Williams gave Officer Cuccuini a copy of the forged checks, each of which had

been stamped  "forged" by the bank.  COH AF No. 9.  Williams identified Webster

as being the person who forged the checks.  COH AF No. 10.

Webster states that she was approached by the HPD (more specifically HPD

Officer) when she stepped outside of ACS's Greensprings store on March 3, 2003.

ACS AF No. 15.  Webster maintains that she was then brought in for questioning by

the HPD, held overnight for a custodial investigation which took place on March 4,

2003, but not formally placed under arrest until March 5, 2003.  Webster SOF Nos.

16.6, 16.7, 16.8.  However, the Alabama Uniform Arrest Report shows an arrest date

of March 3, 2003, for Webster citing the offense of forgery in the second degree, a

felony under Ala. Code § 13A-9-3.  ACS AF No. 17; COH AF No. 14.  Similarly, the Alabama Uniform Incident/Offense Report lists the date of Webster's incident/offense as March 3, 2003.  ACS AF No. 18.

No employee of ACS followed Webster outside on March 3, 2003.  ACS AF No. 19.  Likewise, no one at ACS ever touched Webster or made her get into the HPD police car.  ACS AF No. 20.  The only time Officer Cuccuini touched Webster was when he placed handcuffs on her and subsequently removed them.  COH AF No. 13.  Officer Cuccuini has never been accused of any misconduct, including, but not limited to, claims that he used excessive force in effectuating any arrest.  COH AF No. 2.

Webster admits that a third party informed ACS that Webster had forged checks.  ACS AF No. 22.  Webster admits that prior to March 3, 2003, she had never had an issue at ACS regarding cashing a check.  ACS AF No. 27.  Webster further admits that no one at ACS stated to her that she had been forging checks.  ACS AF No. 28.  However, Webster does maintain that, without the statement from Williams that she saw Webster forge five (5) checks,  Officer Cuccuini would not have had any basis for taking Webster into custody.  Webster SOF No. 25.

After Webster left ACS on March 3, 2003, she had no further contact with any of its employees, including while she was in HPD custody at the police station.  ACS

AF Nos. 29-30.  Relatedly, the only contact Webster had with ACS in regard to this incident was on March 3, 2003.  ACS AF No. 31.

### D.     Events After March 3, 2003

HPD Detective Dexter Alexander ("Detective Alexander") testified that he talked with Dr. Hakim on the 4th or 5th of March concerning the possibility of any misunderstanding as to Webster's involvement with the checks before going to the district attorney with the case and confirmed with Dr. Hakim that there were none. AAF No. 9; (Doc. #59 at Ex. E at 63-65).  Detective Alexander also interrogated Webster on March 4, 2003, and responded during his deposition when asked if she said anything that gave an indication that she knew what she had been arrested for, "No, not really."  (Doc. #59 at Ex. E at 141).

Detective Alexander swore out a warrant for the arrest of Webster on March 5, 2003, on charges of  possession of a forged instrument.  Webster AAF No. 5.1. Webster was committed to jail on March 5, 2003, and indicted on August 8, 2003, on five (5) counts of possession of forged instruments in the second degree.  ACS AF No. 33; Webster AAF No. 5.1.  In May 2004, Webster's criminal case went to trial on possession of a forged instrument in violation of the Alabama Criminal Code. ACS AF No. 33.  On May 19, 2004, Webster was found not guilty of five (5) counts of possession of forged instrument in the second degree, and not guilty of theft of

property in the first degree.  Webster AAF No. 6.

## III.   SUMMARY JUDGMENT STANDARD[7]

The Eleventh Circuit recently summarized the summary judgment burden, including when a defendant seeks judgment as a matter of law on the basis of an affirmative defense:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quotations and emphasis omitted).  If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense. *See Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir.2003).

*International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1273-74 (11th

---

[7]These are the facts for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted). Additionally, whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) ("'The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor.'" (citation omitted).

Cir. 2006).

## IV.   DISCUSSION

### A.   Hakim's Motion for Summary Judgment

Webster has sued Hakim for defamation only.  (Doc. #1 ¶ 25).  Hakim has moved for summary judgment on the grounds that:

1.   The applicable statute of limitations ("SOL") bars Webster's defamation claim; and

2.   The affirmative defense of truth applies as a matter of law.

#### 1.   Hakim's SOL Defense

Turning to Hakim's SOL defense, the applicable SOL for a defamation claim is two (2) years.  *See* Ala. Code § 6-2-38(k) ("All actions of libel or slander must be brought within two years.").  As stated above, Webster filed this lawsuit on March 4, 2005, which means the defamation claim must have arisen at some point between March 4, 2003, and the filing of the case.

The critical question for this court to consider on summary judgment is when to begin measuring the two (2) year period:  from the date of the publication of the alleged defamatory statements, as Hakim argues, or from the date when Alexander had a conversation confirming that there were no misunderstandings regarding the forged checks, as Webster argues.

Under Alabama law, the statute of limitations on a cause of action for defamation begins to run on the date of publication. However, with each separate publication (with the exception of newspapers and similar media), a new defamatory claim accrues:

> The statute of limitations for actions alleging libel or slander prescribes a period that runs from the date of publication-that is the date on which the injury to the plaintiff's reputation occurs and the cause of action is completed. *See Tonsmeire v. Tonsmeire*, 285 Ala. 454, 455, 233 So.2d 465, 466 (1970). Moreover, every distinct publication of libelous or slanderous material gives rise to a separate cause of action, even if the material communicated by each publication relates to the same matter as the previous publications. *Age-Herald Publ'g Co. v. Waterman*, 188 Ala. 272, 278, 66 So. 16, 18 (1913).

*Poff v. Hayes*, 763 So.2d 234, 242 (Ala. 2000) (footnote omitted); *see also Tonsmeire v. Tonsmeire*, 233 So. 2d 465, 458 (Ala. 1970) ("[A] cause of action for libel begins to run at the time it accrues, that is, when the defamatory matter is published.").

Therefore, Webster's knowledge of the alleged defamatory statements is not pertinent to the analysis of Hakim's SOL defense. Moreover, as it pertains to the affidavits of forgery signed by Hakim that implicate Webster, the SOL defense bars that particular defamation claim because Hakim executed them on February 5, 2003, which is outside the March 4, 2003, to March 4, 2005, SOL period. Accordingly, Webster's defamation claim based upon the affidavits is barred by the SOL defense.

In an effort to save her defamation count against Hakim, Webster, in her

opposition to summary judgment,  points to a conversation between Alexander and
Dr. Hakim as being a subsequent publication that is actionable because it falls within
the March 4, 2003, to March 4, 2005, SOL period, and is therefore timely.  While
Hakim does not dispute the applicable time frame, she clarifies in her reply that the
deposition testimony relied upon by Webster involves Dr. Hakim as opposed to
Hakim, who is his wife, and who is the only individual named in this lawsuit.  (Doc.
#58 at Ex. E at 63, 65 ("Q.  Did you contact Dr. Hakim?  A.  At some time I did.  It
might have been on the 4th, might have been on the 5th. . . .  Q.  Your note reflects
something about the possibility of a misunderstanding concerning these checks and
he said there wasn't") (emphasis added)).  Accordingly, summary judgment in favor
of (Mrs.) Hakim is due to be entered on Webster's defamation count in its entirety as
the purported subsequent publication does not relate to her, but rather her husband,
and Webster points to no other potentially timely defamation claims against (Mrs.)
Hakim.[8]

---

[8]While Webster attempts to argue that testimony given by Hakim during her
criminal trial may also be an appropriate additional date of publication for the court
to consider as timely, she does so unpersuasively.  More specifically, she does not
indicate what statements were made by Hakim during the trial, much less explain how
they are defamatory.  Regardless, and as pointed out by Hakim in her reply on
summary judgment (*see* Doc. #62 at 2-3), any allegedly defamatory testimony given
during the trial would be inactionable on the grounds of absolute privilege. *Walker
v. Majors*, 496 So.2d 726, 729 (Ala. 1986) (adopting rule set forth in Restatement
(Second) of Torts § 587 (1977) and clarifying that absolute privilege applies to

### 2.     Hakim's Truth Defense

Because the court concludes that summary judgment is due to be entered in favor of Hakim on the basis that Webster has presented no evidence of any allegedly defamatory publications  by Hakim that are timely, it does not reach the substance of Hakim's truth defense as an alternative basis for summary judgment.

### B.     ACS's Motion for Summary Judgment

Webster has also sued ACS for defamation only.  Similar to Hakim, ACS has moved for summary judgment on the grounds that the applicable SOL bars Webster's claim as untimely.  Additionally, ACS asserts the affirmative defense of conditional privilege as a matter of law.

### 1.     ACS's SOL Defense

Webster was taken into police custody on March 3, 2003, after ACS had communicated to COH about the alleged check forgery.  Webster admits that after leaving ACS on March 3, 2003, she had no subsequent contact with ACS regarding the alleged forgery.   Moreover,  and  with  the  exception  of  any  subsequent

---

defamatory matters published both during and in advance of criminal prosecution: "'A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.'").

communications with the HPD addressed below, Webster has not pointed to any further potentially defamatory acts committed by ACS against her occurring subsequent to March 3, 2003.  Therefore, with March 3, 2003, as the beginning of the applicable SOL period, Webster would have had to file her lawsuit no later than March 3, 2005, to preserve her claims relating to her interrogation by the HPD at ACS.  Instead, she filed her lawsuit one (1) day later, making her defamation count against ACS relating to any alleged statements made on March 3, 2003, untimely as a matter of law.

### 2.    ACS's Conditional Privilege Defense

In an effort to save her defamation claim against ACS, in her opposition, Webster maintains that ACS engaged in communications with COH after March 3, 2003, including offering testimony at Webster's criminal trial, which are timely and actionable.  ACS responds that any statements subsequent to March 3, 2003, that involved the HPD or its investigation are conditionally privileged; and therefore, are not actionable.

As noted by ACS, "[w]hether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge." *Webster v. Byrd*, 494 So.2d 31, 34 (Ala. 1986) (citation omitted); *see also Butler v. Town of Argo*, 871 So. 2d 1, 26 (Ala. 2003) ("'Whether a statement is protected by

a conditional privilege is a question of law for the court.'") (citation omitted).  The

Alabama Supreme Court has established the following framework for determining

whether a conditional privilege exists:

> Where a party makes a communication, and such communication
> is prompted by duty owed either to the public or to a third party, or the
> communication is one in which the party has an interest, and it is made
> to another having a corresponding interest, the communication is
> privileged, if made in good faith and without actual malice. * * * The
> duty under which the party is privileged to make the communication
> need not be one having the force of legal obligation, but it is sufficient
> if it is social or moral in its nature and defendant in good faith believes
> he is acting in pursuance thereof, although in fact he is mistaken.

*Nelson v. Lapeyrouse Grain Corp.*, 534 So.2d 1085, 1094 (Ala. 1988) (citations and

quotations omitted).

This court concludes as a matter of law that any statements made by ACS to the

HPD or the prosecuting authorities as a part of either the investigation or the

prosecution of Webster over the allegedly forged checks are conditionally privileged.

*See Tidwell v. Winn-Dixie, Inc.*, 502 So. 2d 747, 748 (Ala. 1987) ("[T]he store

manager's statement to the police officer could have been found to be within his

conditional privilege.").

Once a court concludes that a statement is conditionally privileged, then the

burden falls upon the plaintiff to show actual malice or bad faith to avoid the

application of the defense.  *See Nelson*, 534 So. 2d at 1094; *Tidwell* 502 So. 2d at 748

("Considering the circumstances existing at the time the statement was made, the trial court could have, indeed, must have, found it conditionally privileged, calling then for proof by plaintiff of actual malice on the part of the store manager.") (citation omitted).  Similar to the plaintiff in *Tidwell*, Webster fails to show any "abusive" actions, "ill will or animosity" on the part of ACS or any of its agents toward her to support a finding of actual malice.  502 So. 2d at 748.  Accordingly, under such circumstances, ACS's conditional privilege defense bars Webster from seeking recovery for defamation stemming from any statements made (that are not otherwise untimely pursuant to ACS's SOL defense) during the course of the HPD's investigation and the subsequent criminal prosecution of Webster.

## C.    COH's Motion for Summary Judgment

Webster has sued COH for municipal liability pursuant to 42 U.S.C. § 1983 for excessive force and unlawful arrest, and for assault and battery.  COH has moved for summary judgment on the grounds:  (1) that Webster's claims against it are untimely; (2) that substantively Webster cannot show any constitutional violations; (3) that she has not met her burden of demonstrating sufficient evidence to support municipal liability pursuant to § 1983; and (4) that as it pertains to Webster's assault and battery claim, no municipal liability exists for the alleged intentional torts of its agents, officers, and employees.

1.      **COH's SOL Defense Bars Webster's Claims.**

Pursuant to *Owens v. Okure*, 488 U.S. 235, 236, 259-50 (1989) and Alabama

Code § 6-2-38(l), the applicable SOL to apply to Webster's constitutional claims is

two (2) years.   *See also Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219

(11th Cir. 2001) ("In borrowing a state statute of limitations, however, federal courts

select only one of the state's limitations periods (namely, the residual state statute of

limitations for personal injury torts [which in Alabama is two (2) years]) and borrow

no more from state law than is necessary to implement that limitations period.");

*Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir. 1992) ("In *Owens v. Okure*, the

Supreme Court held that in section 1983 suits the federal courts are to borrow the

'general' or 'residual' statute of limitations for personal injuries provided under the

law of the state where the court hearing the case sits.  In the instant case, that period

is two years.") (internal citations and *supra* citation omitted).

Likewise, claims of assault and battery are governed by a two (2)-year SOL

under Alabama law.  *See* Ala.Code § 6-2-38(l) ("All actions for any injury to the

person or rights of another not arising from contract and not specifically enumerated

in this section must be brought within two years."); Ala.Code § 6-2-38(n)   ("All

actions commenced to recover damages for injury to the person or property of another

wherein a principal or master is sought to be held liable for the act or conduct of his

agent, servant, or employee under the doctrine of respondeat superior must be brought within two years.").

As set forth above, the HPD took Webster into police custody on March 3, 2003. This act, whether appropriately characterized as a formal arrest or a custodial interrogation, is sufficient to start the SOL clock running because the key factor is the exercise of restraint on a person's freedom of movement. *See Minnesota v. Murphy*, 465 U.S. 420, 430 (1984) (describing "'in custody'" for purposes of receiving *Miranda* protection as either a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest") (citations omitted).

Similarly, March 3, 2003, is the starting date on the SOL for any claims premised upon Officer Cuccuini's conduct when he took Webster into custody. *See Bowling v. Founders Title Co.*, 773 F.2d 1175, 1178 (11th Cir. 1985) ("[T]he general federal rule . . . provides that the statute of limitations begins to run when a plaintiff knows or should know of the injury[.]"); *Free v. Granger*, 887 F.2d 1552, 1555-56 (11th Cir. 1989) ("The statute of limitations begins to run when the first injury, however slight, occurs, even though that injury may later become greater or different."). Therefore, because Webster did not file her lawsuit until March 4, 2005, her claims against COH are time-barred.

### 2.   Webster's Unlawful Arrest Claim Subsumes Any Excessive Force Claim.

Webster's excessive force claim against COH is subsumed by her unlawful arrest claim as a matter of law.  "[A] claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discreet excessive force claim."  *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995)).   Therefore, Webster does not have an independent excessive force claim, and COH is entitled to summary judgment on that particular claim for this <u>additional</u> reason.

### 3.   Webster Has Failed To Establish Sufficient Evidence To Support An Unlawful Arrest Claim.

Under Alabama law, a police officer may effectuate a warrantless arrest of a person for a felony, such as forgery in the second degree when, among other things, the officer has probable or reasonable cause to believe that the person to be arrested has committed a felony.  *See City of Birmingham v. Sutherland*, 834 So. 2d 755 (Ala. 2002) (quoting Ala. Code § 15-10-3).  Therefore, Webster's unlawful arrest claim is tied to the rule of reasonable or probable cause, which is a "practical, nontechnical conception."  *Sutherland*, 834 So. 2d at 761 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

As defined in *Draper v. United States*, 358 U.S. 307 (1959), probable cause:

> [E]xists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

*Id.* at 313 (citation omitted). Moreover, in evaluating whether an officer had probable cause to arrest, it is not necessary that he have before him evidence that would support a conviction for the offense. Instead, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause[.]" *Spinelli v. United States*, 393 U.S. 410, 419 (1969) (citation omitted); *see also Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990) ("A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") (footnote and citations omitted).

Against this backdrop, Webster has failed to establish that Officer Cuccini acted without probable cause in his arrest of her. More specifically, the forged checks, the bank affidavits of forgery, and Williams's identification of Webster as being the person who had forged and cashed the checks were sufficient facts and circumstances within Officer Cuccini's knowledge and possession to warrant a

person of reasonable caution to believe that a forgery had been committed and that Webster was guilty of the crime.  Accordingly, COH is entitled to summary judgment on Webster's unlawful arrest claim on the basis that she lacks sufficient proof to support it.

### 4.  Additionally, Webster Lacks Sufficient Evidence To Support Municipal Liability Under § 1983.

Webster's claims under § 1983 against COH are governed by the rules established by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  In order for COH to be subjected to § 1983 liability, *Monell* requires that Webster prove, at a minimum:  (1) that the individual defendants' actions were unconstitutional; and (2) that a municipal "policy" or "custom" of COH caused these violations to occur.  *See, e.g., Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[A] municipality may be held liable [under § 1983] for the actions of a police officer only when municipal 'official policy' causes a constitutional violation.").  As both of these elements must be satisfied for *Monell* municipality liability to exist, COH's potential liability is necessarily contingent upon a determination of the viability of  Webster's claims against the individual defendants.

However, the only individual defendant that Webster sued is Hakim, who is

unconnected to either COH or the HPD.  Therefore, because Webster has not sued, much less proven that Officer Cuccuini or any other HPD police officer violated her constitutional rights, there can be no municipal liability on the part of COH.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (recognizing that if person suffers no constitutional injury, then no liability may exist against government body); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996), *cert. denied*, 522 U.S. 966 (recognizing that "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred"); *Hardin v. Hayes*, 52 F.3d 934, 939 n.8 (11th Cir. 1995) (holding that when underlying act at issue is not constitutional violation, there is no need to consider whether municipal policy is deficient).

Moreover, even if Webster could establish constitutional violations by one or more of the police officers of the HPD (which she has not and cannot), COH is entitled to summary judgment for the additional reason of her failure to present sufficient evidence that the municipality knew of a need to train its officers in particular areas at issue in this case.  In *City of Canton v. Harris*, 489 U.S. 378, 387 (1989), the Court acknowledged that there can be "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability in  § 1983[,]" and held that "the inadequacy of police training may serve as the basis for § 1983 liability only

where the failure to train amounts to 'deliberate indifference' to the rights of persons with whom the police come into contact." *Id.* at 388 (footnote omitted).  In other words, the deliberate indifference standard requires a conscious choice on the part of a municipality.  The individual "shortcomings" of a police officer[9] or even the negligent administration of an "otherwise sound program" are insufficient grounds for maintaining a § 1983 municipal claim. *City of Canton*, 489 U.S. at 390-91.

Therefore, to the extent Webster seeks to hold COH liable under a failure to train theory, she is unable to do so as nothing contained in the record on summary judgment shows the existence of a preexisting claim or incident, much less a pattern of complaints relating to the HPD's failure to train officers on how to properly handle interrogations, arrests, seizures, searches, or investigations relating to adult suspects.

---

[9]Webster indicates in her opposition to COH's Motion for Summary Judgment that "[i]f Webster's full body cavity search was not a negligent act on the part of the City of Homewood jailer, Plaintiff will request leave to amend her complaint to add City of Homewood jailer under the assault and battery claim."  (Doc. #76 at 15). First, while this particular action is mentioned in her brief, the court does not see where Webster has documented this evidence by referring to a specific citation to the summary judgment record in her statement of facts.  Second, the relief requested by Webster is inappropriately sought in a brief as opposed to a procedurally proper motion for leave.  Third, the court is not inclined to allow any new parties to this case at such a late date, which is substantially outside the April 1, 2006 deadline for Webster to add new parties established under the Scheduling Order.  (*See* Doc. #22 § I.B).  Fourth, Webster's argument misses the mark because the purported negligent conduct on the part of one (1) individual police officer cannot support a § 1983 claim against a municipality, like COH, as a matter of law.

More specifically, even if Webster could establish that Officer Cuccuini lacked probably cause in taking her into custody or that a full body cavity search was unreasonable and violated her constitutional rights, she has not shown a history of civilian complaints about either the HPD's wrongful arrests of persons without probable cause or its use of excessive measures in conducting body searches.

This lack of proof is fatal to any § 1983 failure to train claim against COH.  As the Eleventh Circuit has explained, typically, a failure to train claim cannot be predicated and established, much less sustained, by reliance upon a random or isolated incident of alleged misconduct.  *See McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) ("In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice.") (internal quotations and citations omitted); *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir.1986) ("Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality.  Normally, random acts or isolated incidents are insufficient to establish a custom or policy.") (citation omitted). Put differently, there is no evidence (much less substantial evidence) in the record of a continued or repeated failure by COH "to prevent known constitutional violations by its police force."  *Depew*, 787 F.2d at 1499 (citations omitted).  Therefore, Webster has not adduced sufficient evidence of a policy or custom to support

municipal liability under § 1983, and summary judgment as to all her constitutional claims is proper for COH on this alternative basis.

### 5.   No Municipal Liability Exists For Webster's Assault And Battery Claim.

In count two of her complaint, Webster asserts an assault and battery claim against COH based upon the wilful, knowing, and purposeful actions of Officer Cuccini in his treatment of her.  However, under Alabama law, a municipality, like COH, has no liability for the alleged intentional torts of its agents, officers, and employees.  *See Borders v. City of Huntsville*, 875 So. 2d 1168, 1183 (Ala. 2003) ("Section 11-47-190 'absolves a city from liability for an intentional tort committed by one of its agents . . . .'" (quoting *Ex parte City of Gadsden*, 718 So. 2d 716, 720 (Ala. 1988)); Ala. Code § 11-47-190.  Therefore, COH is immune from liability based upon the intentional torts of Officer Cuccini, and summary judgment on Webster's assault and battery claim is due to be granted in COH's favor.

Alternatively and additionally, to the extent that Webster seeks to hold COH liable for Officer Cuccini's actions on a negligence-based assault and battery theory, summary judgment for COH is still appropriate.  More specifically, under Alabama law, if a police officer is immune from a claim stemming from an arrest, then the municipality which employs him and on whose behalf he makes the arrest, is similarly

immune from suit.  *See, e.g., City of Crossville v. Haynes*, 925 So. 2d 944, 954 (Ala. 2005)  ("[I]f a state actor is immune from liability for a particular act or omission, the state or municipality is also immune from liability for the same act or omission."); *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

In taking Webster into police custody, Officer Cuccuini was engaged in a discretionary function requiring the exercise of judgment, which entitles him to the immunity provided under Alabama law for peace officers.[10]  *See* Ala. Code § 6-5-338(a).  Therefore, because Officer Cuccuini would be afforded state law immunity under any "unintentional" assault and battery theory given Webster's inability to show Officer Cuccuini (or any other HPD officer for that matter) acted "willfully, maliciously, fraudulently, [or] in bad faith" toward her, COH is likewise protected

---

[10]As explained in *Howard* regarding the peace officer immunity statute:

> By enacting this statute, the Legislature intended to afford municipal law-enforcement officials the immunity enjoyed by their state counterparts.  *Sheth v. Webster*, 145 F.3d 1231, 1237 (11th Cir. 1998). Indeed, "[t]his statute, by its terms, extends *state-agent* immunity to peace officers performing discretionary functions within the line and scope of their law-enforcement duties."  *Moore v. Crocker*, 852 So.2d 89, 90 (Ala.2002) (emphasis added).

*Howard*, 887 So.2d at 203.

and is entitled to summary judgment on Webster's assault and battery. *Howard*, 887 So.2d at 205; *Haynes*, 925 So. 2d at 955 ("[A]s stated in *Howard*, "if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

## IV.    CONCLUSION

For the reasons stated above, Hakim's Motion for Summary Judgment is **GRANTED**, ACS's Motion for Summary Judgment (Doc. #53) is **GRANTED**, and COH's Motion for Summary Judgment (Doc. #64) is **GRANTED**.  Additionally, Webster's complaint is due to be dismissed with prejudice.  The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED**, this 22nd day of June, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge